## TOM ·MULLINS v. THE STATE.

### No. 2770.   Decided October, 1903.

**Sodomy—Insufficiency of Evidence.**

See opinion for evidence summarized which is held insufficient to support a conviction for sodomy and does not exclude every reasonable hypothesis except that of guilt.

Appeal from the District Court of Jones.   Tried below before Hon. H. R. Jones.

Appeal from a conviction of sodomy; penalty, five years imprisonment in the penitentiary.

The essential facts are stated in the opinion.

*F. A. Arnold, Arnold & Chapman,* and *Dan M. Jones,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of sodomy, and his punishment assessed at five years confinement in the penitentiary.

The main grounds set up in the motion for new trial are based upon the alleged insufficiency of the evidence to support the conviction, and newly discovered testimony. The statement of facts is not signed by the attorneys nor approved by the trial judge; therefore can not be con-

sidered. In the absence of the statement of facts we are unable to decide either of the questions presented. In order to ascertain whether the alleged newly discovered evidence is in fact such, or that it has any material bearing upon the case, if newly discovered, we must have the evidence before us. As presented no error is made to appear, and the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

DAVIDSON, Presiding Judge.—At a former day of this term, the judgment was affirmed without reference to the facts, because the same was not approved by the trial judge, as shown by the record. This is shown to have been an error committed by the clerk in making up the record, and the statement of facts was in fact approved by the judge in accordance with the law. McKeever testified in substance, for the State, that he and witness Coker had gone down into the pasture after a horse belonging to "Herald." He went to the residence of Mullins and called for appellant, and was informed by Mrs. Mullins that appellant was in the pasture. They rode down in the pasture and laid down on the ground and looked around to see if they could discover any horses, as the mesquite timber was so thick and large it was necessary to do so in order to see any distance; and while lying on the ground, they saw appellant from 100 to 150 yards away, with a brindle bitch pulled up against him. Their attention was called in that direction by hearing a dog holloing or barking. He further testified they rode up within about fifty steps of appellant before he saw them or before they called. When he first saw appellant he and the dog were facing witness. He further testified that he and Coker rode around and came up on the back of or more to the side of appellant and the dog. He had his hands on her side. The dog was tied with a running noose to a mesquite limb, and when he saw us he jumped up and tried to button his pants; and then turned her loose by either jerking the rope off the limb or breaking it, and then doubled up the rope and held it in front of him. He seemed to be frightened. Nothing was said to appellant at the time by this witness in regard to this matter. They simply asked him with reference to the horse they were hunting. This witness testified further that the bitch seemed to be "in heat." There were two other dogs also present, which he says were "pups, about a foot high." Tom Coker testified as did the former witness, as to going by the Mullins' residence and inquiring for appellant, and going down into the pasture; but he states, as they were riding along they heard a noise, made by a dog or cow, and got down and looked, and say appellant with a bitch pulled up against him, and had hold of her hind end with his hand. They then got on their horses and rode around to where he was. This witness fixes the distance at within twenty steps of appellant when he (appellant) first observed them, instead of fifty yards as fixed by the other witness. He corroborates the other witness as to untying the dog; but says appel-

lant turned his back on them as they rode up, and they rode around in front of him, and his pants were unbuttoned. He says that the bitch seemed to be "in heat." There was some discussion between McKeever and Coker at the time as to whether the noise they heard was the lowing of a cow or the holloing or barking of a dog. This witness says he heard the noise several times. This witness places appellant and the dog facing him as they rode to where appellant was. He says: "I did not see his private parts; don't know that he has any, but suppose that he has." This witness admitted that about three or four weeks after this alleged transaction, appellant and his brother came to where he was at work, and had him to sign a paper denying the whole transaction, which he says, "I understood was a lie-bill." He accounts for this by stating the parties were armed at the time and threatened him. He places Morgan Coker as present at the time of signing this document, but Morgan Coker was not introduced as a witness. Tom Mullins put in evidence his character for "chastity and uprightness," which is shown to be good. His father testified the bitch was not "in heat" at the time nor at any other time until May 28th, when she was taken away from their home. Appellant testified in his own behalf, denying the whole transaction as to the intercourse or attempted intercourse with the dog; stating he was down in the pasture with the old slut and her three pups, and the dogs chased a rabbit, which ran into a prairie dog hole, and he was trying to twist the rabbit out with a switch, and that he hit the bitch to drive her away from the hole while he was trying to get the stick in for the purpose of twisting out the rabbit. And while there, witnesses Coker and McKeever rode up, and inquired about a horse that belonged to Herald. He says these witnesses may have heard the dogs hollo, because he hit them a time or two to make them get away from the hole. He denies most emphatically the entire matter with regard to the intercourse or attempted intercourse with the dog. He denied having the dog tied. He says that his pants may have been unbuttoned at the top, as he sometimes unbuttoned them at the top, because he suffered from stomach trouble. On motion for new trial, newly discovered evidence is alleged, which is supported by the affidavit of the absent witness Greenlaw, to the effect that from the first of April to the first of June witness was on and about the place where Mullins lived almost every day, and saw the bitch about the premises during the months of April and May; during that time she was not "in heat" and "was not in condition to be served by males of her kind at any time during this period." The testimony is far from being of that cogency which ought to obtain in this character of case. These witnesses were from 100 to 150 yards away, and if appellant is to be believed they came where he was in a gallop. If the State's witnesses are to be believed they rode up facing defendant and the dog—one of them says, all the way, and another that they rode up near him, and one around rather behind and to the side. During all this time, these witnesses leave the inference that appellant did not

cease, although they were approaching him on horseback and appellant was on the ground where he could observe them, and they on horseback where they could not observe him on account of the surrounding timber and brush. The case seemed to have been fought on the trial largely upon the theory that the bitch was "in heat" as the witnesses term it. This becomes an important fact in the case. The only evidence to meet this came from the interested parties, defendant and his father, whom the jury would rather discredit on account of their interest in the result of the trial. The absent witnesses seemed to be in no way related and were disinterested. This case is not as satisfactorily proved as Cross v. State, 17 Texas Crim. App., 476. We are unwilling to make this a precedent, on the testimony detailed. To say the least of it, if appellant is guilty it can be much more satisfactorily shown. This record, in our judgment does not exclude every reasonable hypothesis except that of guilt. The motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*